NOT FOR PUBLICATION                                                      (Doc. No. 24)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                                    :
ADRIENNE AMEY STRETCH,                :
                                                    :        Civil No. 15-2873 (RBK/AMD)
                                                    :
              Plaintiff,                       :        **OPINION**
                                                    :
                                                    :
                                                    :
              v.                               :
                                                    :
SEVENSON ENVIRONMENTAL          :
SERVICES, INC.,                             :
                                  Defendant.   :
_____  :

**KUGLER**, United States District Judge:

        Adrienne Amey Stretch ("Plaintiff") brings a state law discrimination claim against

Sevenson Environmental Services, Inc. ("Defendant"). This matter comes before the Court on

Defendant's Motion for Summary Judgment (Doc. No. 24). For the following reasons,

Defendant's motion is **DENIED**.

## I.  FACTUAL BACKGROUND

        The facts, in the light most favorable to the Plaintiff are as follows: Plaintiff graduated

from Pennsylvania State University in 1999 with a degree in Environmental Resource

Management with a technical area in water and sewer quality control. Def. Mot., Ex. B ("Stretch

Depo.") at 7:2-13. Plaintiff held various positions after graduation, including soil and water

sampling and retail work. *Id.* at 7:17-9:21. Around April 2000, Plaintiff was employed by OnSite

Environmental to collect water samples at the Vineland Chemical Superfund Site groundwater

1

treatment plant project (the Vineland OU-2 site). Defendant's Statement of Material Facts

("Def.'s Statement") ¶ 22; Plaintiff's Response to Def.'s Statement ("Pl.'s Resp.") ¶ 22. When

Plaintiff first started at Vineland OU-2, Black & Veach was the prime contractor and OnSite was

a subcontractor. Def.'s Statement ¶ 23; Pl's Resp. ¶ 23. Sevenson Environmental Services, Inc.

became the prime contractor at the Vineland OU-2 site later in 2000. Def.'s Statement ¶ 25; Pl.'s

Resp. ¶ 25.

Sevenson is an environmental hazardous waste clean-up company with job sites from the

eastern United States to Louisiana. Def.'s Statement ¶ 1; Pl.'s Resp. ¶ 1. Sevenson subcontracted

Plaintiff's services as a Lab Technician from OnSite after it became the prime contractor at the

Vineland OU-2 site. Def.'s Statement ¶ 25; Pl.'s Resp. ¶ 25. Plaintiff's duties included making

standards, preserving bottles, creating labels, and generally assisting the chemist as needed.

Stretch Depo. at 15:19-16:7. Plaintiff worked in this position from 2000-2003. Def.'s Statement

¶ 25; Pl.'s Resp. ¶ 25. Steven Gillespie ("Gillespie"), the Sevenson Project Manager at the

Vineland OU-2 site, hired Plaintiff for Sevenson in November 2003 after overseeing her work

for OnSite. Def.'s Statement ¶ 37-38; Pl.'s Resp. ¶ 37-38. Sevenson hired Plaintiff as an

Environment Technician in November 2003. Def.'s Statement ¶ 37, 39; Pl.'s Resp. ¶ 37, 39.

Plaintiff held this position from 2003 to 2010. Def.'s Statement ¶ 39; Pl.'s Resp. ¶ 39. Plaintiff's

duties included her previous duties at OnSite, in addition to creating spreadsheets and graphs to

record arsenic contamination in water samples, manifesting waste that left the site, performing

field samples, and other tasks asked of her. Stretch Depo. at 16:11-22.

Plaintiff was promoted to Project Engineer in 2010. *Id.* at 18:15-21. Plaintiff's new

position retained all duties from her old position, in addition to new responsibilities for creating

monthly supports and providing quality control oversight in the field (as the Alternate Quality Control Manager). *Id.*; Def.'s Statement ¶ 65; Pl.'s Resp. ¶ 65.

Plaintiff informed Gillespie that she was pregnant in September 2012. Def.'s Statement ¶ 72; Pl.'s Resp. ¶ 72. Plaintiff informed Gillespie of her pregnancy to ensure that adequate safety steps were taken to protect her and her child. Def.'s Statement ¶ 73; Pl.'s Resp. ¶ 73. Gillespie testified that he recalls having a one-on-one conversation with Plaintiff to make sure her duties would not be a detriment to her or her child. Def.'s Statement ¶ 74; Pl.'s Resp. ¶ 74. Gillespie understood that Plaintiff was entitled to at least 12 weeks of maternity leave and that she would likely miss work for doctors' appointments. Def.'s Statement ¶ 76-77; Pl.'s Resp. ¶ 76-77.

Gillespie claims that from September 2012 through September 2013, he had planned to cover Plaintiff's maternity leave but did not speak to anyone else about the matter. Def.'s Statement ¶ 78; Pl.'s Resp. ¶ 78. However, Gillespie did not design a formal plan to manage Plaintiff's absence and his informal plan was designed "within [his] head." Plaintiff's Statement of Additional Facts That Preclude Summary Judgment ("Pl.'s Statement") ¶ 19-20 (Doc. No. 28-3); Defendant's Responsive Statement to Pl.'s Statement ("Def.'s Resp.") ¶ 19-20. Plaintiff argues that Gillespie's intent to cover her maternity leave is at issue since Gillespie had never handled having a pregnant employee before Plaintiff and never spoke to anyone above him regarding arranging or managing maternity leave. Def. Mot., Ex. E ("Gillespie Depo.") at 27:24-28:1 (Doc. No. 24-9). Gillespie testified that covering for Plaintiff's workload during her leave would be difficult and would require several individuals to divide her work up without additional compensation. Pl.'s Statement ¶ 23-24; Def.'s Resp. ¶ 23-24. Gillespie was also aware that he

could not fire or change Plaintiff's job position simply because she was pregnant. Pl.'s Statement ¶ 28; Def.'s Resp. ¶ 28.

In February 2013, Sevenson's contract as the prime contractor at the Vineland OU-2 site expired and the contract was awarded to a different contractor. Def.'s Statement ¶ 85; Pl.'s Resp. ¶ 85. Sevenson was also aware that its contracts at the South Jersey Clothing Company and Lipari Landfill sites would end shortly after February 2013. *Id.* On February 5, 2013, Gillespie informed Plaintiff that she would no longer be working at the Vineland OU-2 site, and would instead be transferred to the South Jersey Clothing Company site. Stretch Depo. at 22:17-23:21. Gillespie also informed Plaintiff that Sevenson's involvement with the South Jersey Clothing Company site would end in mid-to-late May 2013. *Id.* at 24:21-25:5. Gillespie informed Plaintiff that she would be laid off when the South Jersey Clothing Company site closed, with the "hope of being brought back in the fall." *Id.* at 25:6-10.

Plaintiff also contends that Gillespie told her that he "was not happy about the decision" to transfer and then terminate her position. Stretch Depo. at 23:5-6. Gillespie allegedly told Plaintiff that he called Al LaGreca to yell at him regarding the decision to transfer and terminate Plaintiff. *Id.* at 23:5-10. Al LaGreca is a Vice President of Sevenson who oversaw the Vineland sites from 2000-2012. Pl.'s Statement ¶ 2; Def.'s Resp. ¶ 2. Gillespie testified that he did not tell Plaintiff that the decision to terminate her was made by anyone other than him. Gillespie Depo. at 142:5-10. Defendant also points out that Plaintiff testified that LaGreca never indicated that he knew who she was, let alone made the decision to terminate her. Stretch Depo. at 95:18-21. LaGreca testified that he never discussed layoffs at the Vineland sites with Gillespie. Pl.'s. Opp'n Br., Ex. D ("LaGreca Depo.") at 26:2-6.

Plaintiff testified that she then complained to Gillespie that Sevenson was predominantly terminating women on February 21, 2013. Stretch Depo. at 33:03-23. She testified that Gillespie responded by asking "are they supposed to fire a project engineer and keep an administrative assistant?" *Id.* at 33:18-20. Plaintiff mentioned her own situation, and Gillespie allegedly responded "well, what about you, are you really going to travel to Cornell with a new baby at home?" *Id.* at 33:21-23. Defendant disputes Plaintiff's claims regarding this conversation. Defendant notes that Gillespie testified that he has no memory of this alleged conversation. Gillespie Depo. at 144:1-6. Gillespie also testified that he "kind of knew [Plaintiff] wanted to work after the baby," and that he has no recollection of expressing concern about Plaintiff's willingness to travel for work after her baby. *Id.* at 144:7-19.

Plaintiff's final day of employment at the South Jersey Clothing Company site was April 1, 2013. Stretch Depo. at 128:8-129:15. On April 2, 2013, Plaintiff contacted Sevenson Human Resources for assistance in filing an unemployment claim. Def.'s Statement ¶ 150; Pl.'s Resp. ¶ 150. Plaintiff also mentioned that she felt she had been laid off because she was pregnant. *Id.* Plaintiff only complained to Ms. Wienke in Human Resources directly. Def.'s Statement ¶ 152; Pl.'s Resp. ¶ 152. Plaintiff has not secured full-time employment since her layoff in April 2013. Def.'s Statement. ¶ 173; Pl.'s Resp. ¶ 173.

Plaintiff filed a complaint against Defendant for pregnancy discrimination in violation of the New Jersey Law Against Discrimination in Camden County Superior Court on March 13, 2015. Compl. Defendant removed the case to this court on April 22, 2015. Notice of Removal (Doc. No. 1).

## II. STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Plaintiff raises three articulable claims under the New Jersey Law Against Discrimination ("NJLAD"): pregnancy discrimination, retaliation, and unequal pay. Defendant notes that Plaintiff withdrew her claims regarding retaliation and unequal pay. *See* Def.'s Resp. Br. at 1

(Doc. No. 29); Pl.'s Opp'n Br. at 1 n.1 (Doc. No. 28). Therefore, the Court need only review Plaintiff's pregnancy discrimination claim under NJLAD.

Plaintiff claims that Defendant discriminated against her because of her protected status as a pregnant woman. New Jersey courts have recognized pregnancy discrimination as sex discrimination prohibited by NJLAD. *See McConnell v. State Farm Mut. Ins. Co.*, 61 F. Supp. 2d 356, 362 (D.N.J. 1999) (citing *Castellano v. Linden Bd. of Educ.*, 386 A.2d 396, 402 (App. Div. 1978), *mod. on other grounds*, 400 A.2d 1182 (1979)). The New Jersey courts have also adopted the burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Viscik v. Fowler Equipment Co.*, 800 A.2d 826, 833 (2002). Under *McDonell*, the plaintiff must first lay out a *prima facie* case of discrimination. *Id.* (citation omitted). A *prima facie* case of discrimination requires showings that Plaintiff: "(1) belongs to a protected class; (2) applied for or held a position for which he or she was objectively qualified; (3) was not hired or was terminated from that position; and that (4) the employer sought to, or did fill the position with a similarly-qualified person." *Id.* (citations omitted). Establishing a *prima facie* case creates a presumption of discrimination. *Id.* (citation omitted).

Plaintiff, as a pregnant woman, certainly belonged to a protected class. Plaintiff has also demonstrated that she held a position for which she was objectively qualified and that she was terminated from that position. As for the fourth prong, the Third Circuit has held that in the context of a reduction in force, "it is sufficient to show that [Plaintiff] was discharged, while the [employer] retained someone [outside the protected class]." *Marzana v. Comput. Sci. Corp.*, 91 F.3d 497, 503-04 (3d Cir. 1996) (citations omitted). Plaintiff has sufficiently shown that she was discharged while Mr. Carr was retained.

After the Plaintiff makes out a *prima facie* case, the burden shifts to the employer to provide a "legitimate, non-discriminatory reason for the adverse employment action." *Viscik*, 800 A.2d at 833 (citation omitted). Should the employer provide a non-discriminatory basis for the adverse employment action, the burden shifts back to the plaintiff to show that the basis was mere pretext for discrimination. *Id.* This burden requires evidence that "(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *D'Alessandro v. City of Newark*, 454 Fed. App'x 53, 55 (3d Cir. 2011) (citing *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)). The Third Circuit has also stated that "a trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

Defendant alleges that Mr. Carr's skills and experience were more necessary for Sevenson's ongoing work than Plaintiff's in light of their change in economic circumstances. Def.'s Br. at 11-14 (Doc. No. 24-2). This allegation suffices as a non-discriminatory basis for the adverse employment action taken against Plaintiff. The Court therefore looks to whether Plaintiff has made a showing that Defendant's basis for her termination was mere pretext for discrimination.

The Court notes that the parties dispute whether Plaintiff's conversation with Mr. Gillespie on February 21, 2013 truly took place. If Gillespie did in fact ask Plaintiff if Sevenson was "supposed to fire a project engineer and keep an administrative assistant" and if she was "really going to travel to Cornell with a new baby at home," then Plaintiff has alleged evidence

that would allow a jury to "infer that discrimination was more likely than not a motivating or determinative cause" of her termination. *See D'Alessandro*, 454 Fed. App'x at 55. As discussed above, Defendant denies this conversation ever took place. The parties' dispute over this conversation presents a genuine dispute as to a material fact that goes towards pretext and potential discriminatory intent. Therefore, Defendant's motion for summary judgment is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **DENIED**.


Dated:    12/5/2016                                    s/Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge